UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES OF THE LABORERS HEALTH AND WELFARE PLAN FOR NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>SALVADOR GALVEZ, et al.,<br><br>Defendants. | Case No. 18-cv-07423-HSG<br><br>**ORDER GRANTING AMENDED MOTION FOR DEFAULT JUDGMENT**<br><br>Re: Dkt. No. 37 |

Pending before the Court is Plaintiff Board of Trustees of the Laborers Health and Welfare Plan for Northern California ("Plaintiff") amended motion for default judgment ("Amended Motion") against Defendant Salvador Galvez ("Galvez"). Dkt. No. 37. Plaintiff previously filed a motion for default judgment against Galvez, Dkt. No. 33, which the Court denied without prejudice. Dkt. No. 36. No oppositions to the Amended Motion have been filed. For the reasons set forth below, the Court **GRANTS** the Amended Motion.

**I.   BACKGROUND**

Plaintiff provides health and welfare benefits for laborers, retired laborers, and other related covered employees. Mot. at 6. Plaintiff is one fund among multiple funds administered as part of a multi-employer, employee benefit plan within the meaning of §§ 3(3) and 3(37) of the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. §§1002(3) and 1002(37). *Id.* It is governed by the Amended and Restated Trust Agreement Establishing the Laborers Health and Welfare Trust Fund for Northern California ("Trust Agreement"), dated September 2008, and the Laborers Health and Welfare Trust Fund for Northern California Active Laborers Plan ("Plan"), dated January 1, 2016. Dkt. No. 33-2 ("King Decl.") ¶ 4; Exs. A, B.

The Plan provides coverage for eligible dependents, including a lawful spouse. *Id*. Ex. B, Article I, § 8. As the source of a dependent's eligibility, the Plan participant assumes responsibility for any benefits improperly paid on behalf of an ineligible dependent. *Id.* Ex. A, Article IV, § 4(I), (L), Article IX, § 8; Ex. B, Article X, § 4. Benefits payable may not be subject in any manner to anticipation, alienation, sale, transfer, assignment, pledge, encumbrance or charge by any person, except that any participant may direct that benefits due be paid to an institution in which they or a dependent are hospitalized, to any provider of medical services or supplies, or to any person or agency that may have provided or paid for or agreed to pay for any benefits. *Id.* ¶ 8; Ex. B, Article X, § 2. Plaintiff alleges that Galvez and his ex-wife Carmen Murillo ("Murillo") directed benefits due be paid directly to the hospital and provider of medical services, among others. *Id.*

The Plan requires timely notice by the laborer or his dependent if there is a qualifying event which will modify or terminate coverage under the Plan, including notice of divorce. *Id.* Ex. B, Article II, § 3(b). Timely notice requires sending a letter to Plaintiff containing the name of the qualified beneficiary, the laborer's name and social security number, the event for which the individual is providing notice, the date of the event, and a copy of the final marital dissolution if the event is a divorce, sent no later than 60 days after the date of the qualifying event. *Id.* Ex. B, Article II, § 3(h)(1)(a), (2). Between approximately August 22, 2008 and October 14, 2014, Murillo claimed medical benefits as a dependent of Galvez, by representing herself as Galvez's wife, resulting in the payment by Plaintiff of approximately $41,731.19 in health benefits on behalf of Murillo. *Id.* ¶ 7.

On or about February 2016, Galvez first advised Plaintiff that he and Murillo were divorced. *Id.* ¶ 9. In February 2016, Plaintiff received a copy of the final dissolution of marriage between Galvez and Carmen Murillo filed April 3, 2008, showing Galvez and Murillo to be divorced as of May 19, 2008. *Id.* ¶ 10, Ex. C. Throughout the period during which Murillo claimed health benefits as Galvez's wife, Plaintiff provided Galvez with copies of the explanation of benefits, advising that his claims were being paid on Murillo's behalf. *Id.* ¶ 11; Ex. D. When Plaintiff received the final dissolution of marriage, Plaintiff determined that the amount paid to

2

Murillo during the period of August 22, 2008 through October 14, 2014 was improper, and requested reimbursement from Galvez. King Decl. ¶ 13; Supplemental Declaration of Nickolas King ("King Supp. Decl.," Dkt. No. 37-1) ¶ 4; Ex. F.[1]

## II. LEGAL STANDARD

After entry of a default by the clerk, a party may move for default judgment. *See* Fed. R. Civ. P. 55. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980). As a preliminary matter, a district court must confirm that it has subject matter jurisdiction over the action, personal jurisdiction over the defendant, and that service of process was adequate. *See In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999); *Disney Enters., Inc. v. Vuong Tran*, No. 12-5030 SC, 2013 WL 1832563, at *1 (N.D. Cal. May 1, 2013). After finding these threshold matters met, a court next considers whether the following factors ("the *Eitel* factors") support an entry of default judgment:

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986).

In considering these factors, a court takes all factual allegations in a plaintiff's complaint as true, except for those relating to damages. *See TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). And relief granted under a default judgment is always limited by Federal Rule of Civil Procedure 54(c), in that the judgment "shall not be different in kind or exceed in amount that prayed for in the [complaint]."

## III. DISCUSSION

### A. Jurisdiction and Service of Process

In considering an entry of default judgment, a district court has an "affirmative duty" to examine its jurisdiction over "both the subject matter and the parties." *In re Tuli*, 172 F.3d at 712.

---

[1] On February 3, 2020, the Court entered a stipulated judgment between Plaintiff and Murillo in the amount of $41,731.19. Dkt. No. 26.

A court must also assess whether there was proper service of process on the defendant. *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1054 (N.D. Cal. 2010).

### i. Subject Matter Jurisdiction

Congress broadly authorizes the federal courts to exercise subject matter jurisdiction over all civil actions arising under the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331. District courts "shall have original jurisdiction of all civil actions, suits, or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress," unless otherwise provided by Congress. 28 U.S.C. § 1345.

Plaintiff filed this matter pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1), which provides for exclusive jurisdiction of civil actions brought by a fiduciary, such as Plaintiff. *See also* ERISA § 404(a)(1)(D), 29 U.S.C. §1104(a)(1)(D) (a fiduciary discharges duties with respect to a plan solely in the interest of participants and beneficiaries and in accordance with the documents and instruments governing the plan). Therefore, the Court has subject matter jurisdiction over this action.

### ii. Personal Jurisdiction

Courts have recognized two types of personal jurisdiction: general jurisdiction and specific jurisdiction. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Bristol-Myers Squibb Co. v. Superior Court of California*, 137 S. Ct. 1773, 1780 (2017) (citing *Goodyear*, 564 U.S. at 924) (internal quotation marks omitted).

In determining an individual's domicile, a number of factors are considered, including current residence, location of property, and location of spouse and family. *Lew v. Moss*, 797 F.2d 747, 749-50 (9th Cir. 1986). Here, the benefits at issue were paid from a corporate co-trustee bank in California, and the Plan is administered in this District. King Decl. Ex. B (reflecting Plaintiff's address in Fairfield, California). Galvez also resided in Tracy, California during the time period at issue. King Decl. ¶ 6. Taken together, these factors indicate that the Court has general jurisdiction over the Defendant.

4

### iii. Service of Process

"Service of process is the *mechanism* by which the court [actually] acquires" the power to enforce a judgment against the defendant's person or property. In other words, service of process is the means by which a court asserts its jurisdiction over the person." *S.E.C. v. Ross*, 504 F.3d 1130, 1138 (9th Cir. 2007) (citation and quotations omitted) (emphasis in original). Without proper service, the Court "has no power to render any judgment against the defendant's person or property unless the defendant has consented to jurisdiction or waived the lack of process." *Id.* at 1138–39. On October 15, 2019, Galvez was personally served with the summons and complaint. Dkt. No. 27. Because Galvez has not appeared, service of the Amended Motion is not necessary. *See* Fed. R. Civ. P. 55(b)(2). Accordingly, the Court is satisfied that service of process of the summons and complaint was sufficient to Galvez.

## B. The *Eitel* Factors

### i. First Factor: Possibility of Prejudice

First, the Court must consider the possibility of prejudice to Plaintiff. *Id.* at 1471. A plaintiff may be prejudiced when, in the absence of a default judgment, plaintiff would be left with no "other recourse for recovery." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). Courts have found prejudice when a defendant has failed to appear or defend against a suit, and plaintiff could not otherwise seek relief. *See, e.g.*, *id.*; *Fulton v. Bank of Am., N.A.*, No. 2:16-cv-04870, 2016 WL 7156440, at *3 (C.D. Cal. Dec. 6, 2016).

Plaintiff here will be prejudiced absent entry of default judgment because Plaintiff will have no recourse to recover the Property and apply its proceeds to the outstanding judgment. *See, e.g.*, *Willamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 13-cv-848-JCS, 2014 WL 5281039, at *6 (N.D. Cal. 2014) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor."). The harm Plaintiff and its beneficiaries will suffer by being denied reimbursement for amounts wrongfully paid outweighs the harm suffered by Galvez in having a default judgment entered against him. The Court finds that the first *Eitel* factor favors entry of default judgment.

### ii. Second and Third Factors: Merits of Plaintiff's Substantive Claim and Sufficiency of the Complaint

The second and third *Eitel* factors consider the merits and sufficiency of Plaintiff's claims. These two factors are often analyzed together and require courts to consider whether a plaintiff has "state[d] a claim on which [it] may recover." *Id*. at 1175. With the exception of facts relating to damages, courts must take as true all other factual allegations pled in the complaint. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18. Of all the *Eitel* factors, courts often consider the second and third factors to be "the most important." *Sanrio, Inc. v. Jay Yoon*, No. 5:10-CV-05930 EJD, 2012 WL 610451, at *4 (N.D. Cal. Feb. 24, 2012); *see also Fulton*, 2016 WL 7156440, at *5. Plaintiff pleads conversion and equitable restitution against Galvez.

      a. <u>Conversion</u>

To establish conversion, Plaintiff must show an intent or purpose to convert and exercise ownership by the defendant, *i.e.*, to exercise ownership over property which belongs to another. *Collin v. American Empire Ins. Co.*, 21 Cal.App.4th 787, 812 (1994). It is not necessary that there be a manual taking of the property, and it is only necessary to show an assumption of control or ownership over the property, or that the alleged converter has applied the property to his own use. *Shopoff & Cavallo LLP v. Hyon*, 167 Cal.App.4th 1489, 1507 (2008). Money may be the subject of a cause of action for conversion if there is a specific, identifiable sum involved. *PCO Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP*, 150 Cal.App.4th 384, 395 (2007). Conversion must be knowingly or intentionally done. *Taylor v. Forte Hotels International*, 235 Cal.App.3d 1119, 1124 (1991).

Here, Plaintiff contends that Galvez and Murillo directed Plaintiff to make payments directly to the provider of services. King Decl. ¶ 7. Galvez failed to send in the required proof of marital dissolution until eight years after Murillo received payment for her medical benefits from Plaintiff. *Id.* ¶ 10, Ex. C. Galvez also did not inform Plaintiff of the mistake in payment of benefits, or the mistake in listing Murillo as a beneficiary, although he received a periodic explanation of benefits showing that benefits were being paid on Murillo's behalf. *Id.* ¶ 11; Ex. D. As a result, $41,731.19 was paid out by Plaintiff to Murillo as the purported spouse of Galvez. King Supp. Decl. ¶ 4; Ex. F.

Plaintiff adequately alleges that Galvez was aware that Plaintiff was paying out these benefits and took no action to prevent the continued payout of benefits for his former spouse. Accordingly, the Court finds that Plaintiff has adequately stated a claim for conversion.

### b. Equitable Restitution

ERISA § 502(a)(3), 29 U.S.C. §1132(a)(3) provides that a fiduciary may bring a civil action to obtain redress for violations of the ERISA statutes or terms of the Plan, or to enforce the provisions of ERISA or the terms of the Plan. This remedy is available where the defendant "actively and deliberately" misleads the plaintiff to the plaintiff's detriment. *Northwest Adm'rs, Inc. v. Cutter*, 328 Fed.Appx. 577, 578 (9th Cir. July 9, 2009) (equitable restitution is available for medical benefits paid to individual whom defendant misrepresented as his wife).[2] "The law has evolved in the ERISA context to support an equitable restitution claim to recover benefits paid for an individual ineligible under an employee benefits plan." *Trustees ex rel. Northern California General Teamsters Sec. Fund v. Fresno French Bread Bakery, Inc.*, No. CV F 12-0187 LJO BAM, 2012 WL 3062174 *6 (E.D. Cal. July 25, 2012).

As noted, Plaintiff contends that Galvez did not timely send in the necessary paperwork to inform Plaintiff of his divorce from Murillo. Without such paperwork, and with the representations that Murillo remained the spouse of Galvez, Plaintiff paid out $41,731.19 in medical benefits for Murillo's medical treatment. As also noted, Galvez did not inform Plaintiff that benefits were being improperly paid out to his former spouse despite receiving periodic explanation of benefits that made clear that Plaintiff was paying benefits on behalf of Murillo after their divorce. Therefore, the Court finds Plaintiff adequately alleges that Galvez actively and deliberately ignored the requirement to provide written confirmation of changes to a participant's eligible dependents, and misled Plaintiff to obtain medical benefits for Murillo, to which she was not entitled, to Plaintiff's detriment.

Accordingly, the Court finds that Plaintiff has adequately stated a claim for equitable restitution.

---

[2] As an unpublished Ninth Circuit decision, *Northwest Adm'rs, Inc.*, is not precedent, but may be considered for its persuasive value. *See* Fed. R. App. P. 32.1; CTA9 Rule 36-3.

### iii. Fourth Factor: Damages in Relation to Conduct

Under the fourth *Eitel* factor, the Court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct. *Eitel*, 782 F. 2d at 1471. In general, default judgment "is disfavored when a large amount of money is involved or unreasonable in light of the potential loss caused by the defendant's actions." *Omni Fin., LLC v. Glob. Petroleum, LLC*, No. 19-CV-00031-BLF, 2019 WL 5626631, at *4 (N.D. Cal. Oct. 31, 2019) (citation and quotations omitted). "However, even where the amount of money at issue is substantial, 'this factor does not significantly weigh against granting default judgment' if the amount sought 'is consistent with that to which [the p]laintiff is entitled by law.'" *Id*. (citation omitted and alterations in original).

Here, Plaintiff seeks judgment in the amount of $41,731.19 against Galvez for medical benefits paid on behalf of Murillo between approximately August 22, 2008, and October 14, 2014. King Supp. Decl. ¶ 4; Ex. F. This amount directly reflects the loss caused by Galvez's actions and the amount paid, and the fourth *Eitel* factor favors entry of default judgment.

### iv. Fifth Factor: Possibility of Dispute Concerning Material Facts

The fifth *Eitel* factor examines the "possibility of dispute as to any material facts in the case." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. "Upon entry of default, all well-pleaded facts in the complaint are taken as true, except those relating to damages." *Philip Morris USA*, 219 F.R.D. 494, 500 (C.D. Cal. 2003) (citing *TeleVideo Sys., Inc.*, 826 F.2d at 917–18). However, where a plaintiff fails to adequately plead a legal claim, this factor "is either neutral or disfavors default [judgment]." *Fulton*, 2016 WL 7156440, at *5 (citing *Stuckey v. Lucas*, No. 3:11-cv-05196, 2012 WL 5948959, at *4 (N.D. Cal. Sept. 12, 2012)). As discussed above, Plaintiff has sufficiently pled conversion and equitable restitution.

Galvez first advised Plaintiff that he and Murillo were divorced in February 2016. King Decl. ¶ 9. That is also when Plaintiff received a copy of the final dissolution of marriage, dated April 3, 2008. Pursuant to that dissolution, Galvez and Murillo were divorced as of May 19, 2008, nearly eight years prior to Galvez notifying Plaintiff. King Decl. ¶ 10; Ex. C. These facts do not appear susceptible to reasonable dispute, and this factor weighs in favor of entry of default.

### v. Sixth Factor: Default Due to Excusable Neglect

The sixth *Eitel* factor considers the possibility that Defendant's default resulted from excusable neglect. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Courts have found that where defendant was "properly served with the complaint, the notice of entry of default, as well as the paper in support of the [default judgment] motion," there is no evidence of excusable neglect. *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001).

There is no evidence that Galvez's failure to respond was the result of excusable neglect. Defendant was properly and timely served, and apparently chose not to respond. Therefore, the sixth *Eitel* factor favors entry of default judgment.

### vi. Strong Policy Favoring Decisions on the Merits

The seventh *Eitel* factor emphasizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F. 2d at 1472. While this preference does not preclude a court from granting default judgment, *see PepsiCo*, 238 F. Supp. 2d at 1177, the general rule is that "default judgments are ordinarily disfavored." *Eitel*, 782 F. 2d at 1472. Deciding the case on the merits is nearly impossible where a party refuses to participate. This factor thus weighs against, but does not preclude, entry of default judgment.

\* \* \*

In sum, the Court finds that the *Eitel* factors favor default judgment against Defendant.

### C. Remedies

After determining that the *Eitel* factors favor the entry of default judgment, the Court must look to the relief Plaintiff is seeking. Under Federal Rule of Civil Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c).

### i. Damages

In determining damages, "a court can rely on the declarations submitted by the plaintiff." *DR JKL Ltd. v. HPC IT Education Ctr.*, 749 F. Supp. 2d 1038, 1046 (N.D. Cal. 2010). "Rule 55 does not require the court to conduct a hearing on damages, as long as it ensures that there is an evidentiary basis for the damages awarded in the default judgment." *Hernandez v. Martinez*, No.

12-CV-06133-LHK, 2014 WL 3962647, at *9 (N.D. Cal. Aug. 13, 2014).

Plaintiff has sufficiently demonstrated that between approximately August 22, 2008 and October 14, 2014, Murillo claimed medical benefits as a dependent of Galvez, by representing herself as Galvez's wife, resulting in the overpayment by Plaintiff of approximately $41,731.19 in health benefits on behalf of Murillo. King Decl. ¶ 7; King Supp. Decl. ¶ 4; Ex. F. Accordingly, the Court finds that Plaintiff is entitled to this amount as damages.

### ii. Attorneys' Fees and Costs

Plaintiff also requests reasonable attorneys' fees and costs in the amount of $6,681.92. Bowen Supplemental Declaration ¶¶ 5-6; Ex. A (Dkt. No. 37-3, "Bowen Supp. Decl."). 29 U.S.C. §1132(g)(2)(D) provides that:

> In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan— (D) reasonable attorney's fees and costs of the action, to be paid by the defendant

The Trust Agreement, Article IV, Section 3, similarly provides that Plaintiff is entitled to its attorneys' fees and costs incurred in a suit to recover amounts wrongfully obtained by Galvez. King Decl. ¶ 4; Ex. A.

The hourly rates for the fees requested appear reasonable (rates of $290 to $345 per hour). Bowen Supp. Decl. ¶¶ 5-6; Ex. A. Bullivant Houser Bailey PC (counsel for Plaintiff) kept detailed, contemporary time records for the work its attorneys performed. *Id*. The time records are set forth chronologically, and the work is summarized and explained. The hourly rates for the firm's lawyers are reasonable, the work performed appears to have been reasonable, and the Court will grant the request for the above attorneys' fees and costs. Accordingly, the Court **GRANTS** Plaintiff's request for attorneys' fees and costs in the amount of $6,681.92.

//
//
//
//

## IV. CONCLUSION

For the foregoing reason, the Court **GRANTS** the Amended Motion as follows: Plaintiff is entitled to $41,731.19 in damages, and $6,681.92 in reasonable attorneys' fees and costs. Plaintiff is **DIRECTED** to submit a short proposed form judgment of no more than two (2) pages consistent with this Order by November 2, 2020.

**IT IS SO ORDERED.**

Dated: 10/19/2020

_____
HAYWOOD S. GILLIAM, JR.
United States District Judge